**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LAMONT HEARD,

   *Plaintiff*,

v.

YARNICE STRANGE,
and SHANNON KYLE,

   *Defendants*.

_____/

CASE NO. 2:17-cv-13904
DISTRICT JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF LEAVE TO AMEND AND TO *SUA SPONTE* PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT

### I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the court grant Plaintiff leave to amend his complaint.

If the court adopts that recommendation and the recommendation based on screening of the amended complaint, **IT IS FURTHER RECOMMENDED** that the court **SUA SPONTE DISMISS:**

- Plaintiff's claim for conspiracy,
- defendants Douglas, Farnsworth, and Perry, and
- all claims against Defendants in their official capacities.

1

If all recommendations are adopted, the only remaining claim would be one for retaliation against defendants Yarnice Strange, Kyle Shannon,[1] Cedric Griffey, Scott Schooley, and Unknown Oasterhof.

## II. REPORT

### a. Background

On December 4, 2017, pro se plaintiff Lamont Heard ("Plaintiff") filed a civil rights claim under 42 U.S.C. § 1983 against defendants Yarnice Strange and "Shannon Kyle" (collectively "Defendants"). In his initial complaint, Plaintiff alleges Defendants retaliated against him for exercising his First Amendment rights by transferring him from Thumb Correctional Facility ("TCF") to G. Robert Cotton Correctional Facility, where he is currently incarcerated. (Docs. 1, 15 at ID 196). According to Plaintiff, as a result of the transfer, he lost the job with which he earned money to pay for his attorney and a private investigator, it became more difficult for his family to visit him, he lost access to certain programming, and his ability to collaborate with co-plaintiffs in a separate civil case was impeded. (Doc. 1 at ID 6–7). The case was referred to the undersigned for all pretrial proceedings under 28 U.S.C. § 636(b)(1)(A) and § 636(b)(1)(B). (Doc. 9).

On February 8, 2018, Defendants filed a Motion for Summary Judgment, (Doc. 13), to which Plaintiff was ordered to respond, (Doc. 14). On March 2, 2018, Plaintiff filed an amended complaint. (Doc. 15). In it, he sought to supplement and alter the factual basis for his retaliation claim, as well as to add a conspiracy claim and six new defendants: Adam

---

[1] The Amended Complaint clarifies that Defendant "Shannon Kyle" should read "Kyle Shannon."

Douglas, Natalie Farnsworth,[2] Cedric Griffey, Scott Schooley, Unknown Oasterhof, and Michele Perry. (*Id.*). Another week passed, and then on March 9, 2018, Plaintiff filed a brief opposing Defendants' Motion for Summary Judgment. (Doc. 16). Shortly thereafter, Defendants objected to Plaintiff's attempt to amend his complaint and filed a response to his reply. (Doc. 17). Most recently, Plaintiff filed a reply to Defendants' objection. (Doc. 18).

### b. Analysis

First, the court must determine whether Plaintiff has amended his complaint as a matter of right, or whether the court should allow him to amend in the interest of justice, either of which would render moot Defendants' motion for summary judgment based on his initial complaint.

### 1. Amendment As A Matter of Right

When Plaintiff filed his amended complaint, he attempted to do so as a matter of right under Rule 15(a)(1)(B). (Doc. 14). Rule 15(a)(1) provides:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1)(B). Defendants argue that Rule 15(a)(1)(B) is inapposite, however, because the original complaint here is not "a pleading to which a responsive pleading is required," as the Prison Litigation Reform Act ("PLRA") provides that a defendant can

---

[2] Plaintiff refers alternately to "Fransworth" and "Fansworth." (Doc. 15). Defendants' Motion for Summary Judgment indicates "Farnsworth" is the correct spelling. (Doc. 13).

3

waive the right to reply to any action a prisoner brings under § 1983. (Doc. 17 at ID 223 (citing 42 U.S.C. § 1997e(g)(1))).

Plaintiff resists Defendants' interpretation of Rule 15, arguing that "[c]ourts uniformly hold where no defendant has yet filed a responsive pleading to the original complaint, a plaintiff is entitled to amend his complaint as of right pursuant to Fed. R. Civ. P. 15(a)." (Doc. 18 at 1). But the cases Plaintiff cites are interpretations of a prior version of Rule 15(a) that did not include the language on which Defendants rely. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000); *Broyles v. Corr. Med. Servs.*, No. 08-1638, 2009 WL 3154241, at *3-4 (6th Cir. Jan. 23, 2009); *Friske v. Scutt*, No. 07-13747, 2008 WL 4857963, at *1 (W.D. Mich. Nov. 6, 2008). Previously, under Rule 15(a), a plaintiff's right to amend terminated when a responsive pleading was filed. In 2009, the rule was amended so that the right now terminates either 21 days after service of a motion under Rule 12(b), (e), or (f), or 21 days after service of a responsive pleading—at least "if the pleading is one to which a responsive pleading is required." Fed. R. Civ. P. 15(a) advisory committee's note to 2009 amendment. Thus, whether Rule 15(a)(1)(B) is applicable here remains an open question.

Still, by and large, neither defendants nor courts have questioned prisoner-plaintiffs' use of Rule 15(a)(1)(B) to amend their complaints. *See, e.g.*, *Hollins v. Curtin*, No. 1:13-cv-8, 2014 WL 320211, *1 (W.D. Mich. Jan. 29, 2014) (finding Rule 15(a) allowed the plaintiff to amend his complaint as a matter of course before any defendant has filed a response); *Martin v. McDaniel*, No. 5:11-CV-192-MTT-MSH, 2011 WL 4369472, *1

4

(M.D. Ga. Sept. 19, 2011) (finding Rule 15(a)(1)(B) allowed the plaintiff to amend his complaint "one time as a matter of course prior to the filing of a responsive pleading"); *Tucker v. Searcy*, No. 5:12-cv-244-MTT-MSH, 2013 WL 1715421, *2 (M.D. Ga. April 19, 2013) (same). In a handful of cases, courts have noted the potential interplay between the PLRA and Rule 15(a)(1)(B), but declined to address the issue as it was not squarely presented. *Cooper v. Pennsylvania Dep't of Corrections*, Civil No. 1:CV-12-1186, 2013 WL 1774816, at *1 (M.D. Penn. April 25, 2013); *Young v. Holmes*, No. C 09-01042 JSW, 2011 WL 4905697, *1, n.1 (N.D. Cal. Oct. 14, 2011). In this case, however, it is.

The task of statutory interpretation is properly begun by examining "the language of the statute itself to determine if its meaning is plain," *U.S. v. Wagner*, 382 F.3d 598, 607 (6th Cir. 2004). The statute in question states: "A party may amend its pleading once as a matter of course . . . (B) *if the pleading is one to which a responsive pleading is required*, 21 days after service of a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1)(B). (emphasis added). Read naturally, the conditional clause acts as gatekeeper: only if the conditional element is satisfied may a party amend its pleading before or up to 21 days after service of a responsive pleading.

The question then becomes whether a responsive pleading was required here. Section 1997e(g)(1) explicitly states that "[a]ny defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other federal law." It follows that in this case, an action brought by a prisoner under § 1983, no defendant was required to file a reply—

5

including an answer. *E.g.*, *Jones v. Barnhart*, Case No. 2:10-cv-12114, 2017 WL 1493005, at *2 (E.D. Mich. Apr. 26, 2017) (holding that in the context of § 1997e(g)(), "reply" includes an answer); *Aaron v. Dyer*, No. 15-cv-11014, 2016 WL 1698399, at *1 (E.D. Mich. Apr. 28, 2016) (same). While a court may order a defendant to reply "if it finds that the plaintiff has a reasonable opportunity to prevail on the merits," 42 U.S.C. § 1997e(g)(2), the court has issued no such order in this case. Thus, I suggest that no responsive pleading was required, the conditional clause of Rule 15(a)(1)(B) was not triggered, and that particular path to amendment remains barred to Plaintiff.

Nor was Plaintiff entitled to amend his complaint as a matter of right under Rule 15(a)(1)(A), because he filed his amendment more than 21 days after service of the original complaint on Defendants. (Doc. 17 at ID 223). I suggest that what remains to Plaintiff, then, is to amend his complaint by the court's leave or the opposing parties' consent under Rule 15(a)(2).

### 2. Amendment By Leave of Court

Plaintiff did not explicitly seek the court's leave to amend his complaint, but the court considers that he is currently incarcerated and proceeding pro se, and thus interprets his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). I recommend the court construe Plaintiff as seeking the court's leave to amend in the alternative. (Doc. 14).

The Supreme Court has interpreted Rule 15(a)(2)'s mandate that courts "should freely give leave [to amend] when justice so requires" to be "[i]n the absence of any

apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Defendants argue the court should refuse to allow Plaintiff to amend his complaint because the amendment would prove futile. (Doc. 17 at ID 224).

The test for futility is whether the amended complaint could survive a Rule 12(b)(6) motion to dismiss. Such a motion tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action." *Id.* When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But even *pro*

*se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Before delving deeper into Defendants' reasoning, I pause to note that a court cannot consider "matters outside the pleading" in its futility analysis, just as it could not in ruling on an ordinary Rule 12(b)(6) motion. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). And I suggest that on the pleadings alone, Plaintiff's proposed amended complaint appears to state a claim upon which relief could be granted.

The proposed amended complaint sets forth claims for retaliation under § 1983 and conspiracy under § 1985. (*See* Doc. 15). To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

To successfully sue on a retaliation claim, Plaintiff must establish: (1) he engaged in protected conduct, (2) Defendants took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct," and (3) the adverse action was motivated at least in part by Plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394-95 (6th Cir. 1995). In arguing that amendment would be futile, Defendants argue Plaintiff insufficiently pleaded two of the three factors: causality

8

and adverse action.[3] They argue that "[t]he undisputed record refutes any causal connection between Defendant Shannon or Defendant Strange's alleged knowledge of Heard's legal filings and his transfer," and that "[i]t also refutes any question of fact as to whether the transfer and circumstances surrounding it rise to the level of an adverse action necessary to maintain this claim." (Doc. 17 at ID 225). Again, the court cannot consider the record in its futility analysis, "undisputed" or not. Regardless, the allegations in Plaintiff's amended complaint do suggest a possible causal connection between his involvement in litigation at the prison and his transfer—at least, accepting the factual allegations as true and construing the complaint in the light most favorable to Plaintiff, as the court must at this stage.

Plaintiff describes how soon after arriving at TCF, he was assigned to a housing unit supervised by Oasterhof and began discussing filing litigation with other inmates. (Doc. 15 at ID 197). He alleges Oasterhof responded by sending "multiple fabricated claims to TCF administration . . . stating Plaintiff was recruiting for gang membership and holding meetings to disrupt the operation of the facility." (Doc. 15 at ID 198). Although Oasterhof apparently wanted Plaintiff transferred to another prison, instead Plaintiff was placed in a different housing unit, supervised by Strange. (*Id.*). Plaintiff alleges Douglas, Shannon, and Strange each independently threatened that he would be transferred to a different prison if he continued to pursue litigation. (Doc. 15 at ID 198, 199, 200). His name was placed on the transfer list in March 2017, about seven months after his arrival at TCF. (Doc. 15 at ID

---

[3] Defendants' brief objecting to Plaintiff's "purported amended complaint" refers the reader back to their motion for summary judgment, (Doc. 17 at ID 224), in which they assume *arguendo* that Plaintiff was engaged in protected conduct, (Doc. 13 at ID 52).

9

199). According to Plaintiff, at least, he never received "a misconduct" while at TCF and "[t]here was no other reason to place plaintiff on the transfer list." (*Id.*). In June 2017, several days after an alleged argument between Plaintiff and Strange about his involvement in other litigation, a transfer order for Plaintiff was finalized. (Doc. 15 at ID 202). A matter of days after Shannon and Strange's threats, Plaintiff was transferred. (Doc. 15 at ID 203). Construing the complaint in the light most favorable to Plaintiff, I suggest he has sufficiently alleged a possible causal connection between his filing litigation and his transfer.

Further, case law has established at least some of the alleged actions attributed to Defendants to be adverse actions. While "ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct," the Sixth Circuit found otherwise where a prisoner "suffered a number of foreseeable consequences"— including where he lost his high-paying job he needed to pay his attorney and where the transfer made it more difficult for his attorney to visit or represent him. *Siggers-El v. Barlow*, 412 F.3d 693, 701–02. Similarly, Plaintiff here alleges in relevant part that the transfer caused him to lose the job by which he earned money to pay for his lawyer and for private investigator Lewis, as well as for filing fees, documents to mail to his attorney, and phone calls to his attorney. (Doc. 15 at ID 202.) Thus, I suggest Plaintiff's amended complaint contains allegations at least sufficient to survive a Rule 12(b)(6) motion to dismiss.

Defendants also assert it would be futile to allow Plaintiff to amend his complaint because his claims would be blocked by qualified immunity. (Docs. 13, 17). I note that qualified immunity provides no protection from individual liability for declaratory relief or injunctive relief, *e.g.*, *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001). But this would not alone save Plaintiff's claim, (Doc. 15 at ID 205), because his claim for declaratory relief "would be redundant to the relief already sought" in his complaint and where there is "nothing anticipatory about plaintiff's claim which requires declaratory relief." *Florists' Transworld Delivery v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 847 (E.D. Mich. 2003) and *O'Brien v. BAC Home Loan Servicing*, No. 10-15136, 2011 WL 1193659, at *2 (E.D. Mich. Mar. 28, 2011), respectively.

Before Defendants may employ the shield of qualified immunity, however, a court must determine that their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 547 U.S. 800, 818 (1982); *Noble v. Schmitt*, 87 F.3d 157, 160–61 (6th Cir. 1996). A favorable determination here is not guaranteed, considering the Sixth Circuit case law described above.

In conclusion, I suggest that it would not be completely futile for the court to grant Plaintiff leave to amend his complaint, and recommend the court do so. Under the retaliation claim, the only defendants to whom personal action is attributed are Defendants Strange, Shannon, Griffey, Schooley, and Oasterhof. Since § 1983 claims require personal

11

involvement for liability to attach, *Rizzo, supra*, it is further recommended that only these Defendants remain in the case.[4]

Further, since portions of the complaint fail to state a claim, I suggest that these portions be dismissed pursuant to the court's screening of the complaint.

I realize that the court could, alternatively, simply grant the motion to amend in part, allowing the retaliation claim to proceed only. However, since to do so would require the court to rely on the prisoner to refile the appropriate amended complaint, I suggest allowing the entire amended complaint as proposed to be filed and then proceeding to screening of the amended complaint.

### 3. Screening of the proposed amended complaint

Plaintiff's amended complaint is subject to screening pursuant to the PLRA, which provides:

> The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

---

[4] I note that although Douglas is mentioned in the context of Plaintiff's transfer between prisons, it is only alleged that Strange told Plaintiff that Douglas was one of several who were "tired of plaintiff assisting others with grievances" and also felt it "was time to transfer Plaintiff." (Doc. 15 at ID 200). This is insufficient to state personal involvement that caused Plaintiff's injury. In addition, Farnsworth and Perry are not mentioned under the retaliation claim at all. To the extent that the amended complaint could be viewed so liberally as to bring their mention under the conspiracy claim into the realm of the retaliation claim, the Complaint itself defeats any claim against Farnsworth and Perry for retaliation since it states that "Farnsworth and Perry" "request[ed]" a transfer of Plaintiff but that "[a]t the time of Farnsworth and Perry request, they did not have the authority to make a transfer request." (Doc. 15 at ID 204.) Accordingly, the amended complaint defeats any potential causal connection between their conduct and Plaintiff's alleged adverse action, the transfer. *Rizzo, supra.*

12

42 U.S.C. § 1997e(c)(1).

### 1. Retaliation Claim

For the reasons detailed above in my analysis of whether amendment would be futile, I suggest Plaintiff has stated a claim for retaliation against defendants Strange, Shannon, Griffey, Schooley, and Oasterhof upon which relief could be granted, and that therefore this retaliation claim against the above defendants should survive screening.

### 2. Conspiracy Claim

Plaintiff's "Second Cause of Action," however, fares less well. (Doc. 15 at ID 204). It appears to allege a conspiracy, but even if the claim was expressly raised under the relevant federal statute, 42 U.S.C. § 1985, his amended complaint fails to state a viable claim of conspiracy. In relevant part, § 1985 provides a cause of action for damages where "two or more persons . . . conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," and where at least one party engages in "any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3). The Supreme Court has concluded that, due to "language requiring intent to deprive of equal protection, or equal privileges and immunities," only conspiracies motivated by "racial, or perhaps otherwise class-based, invidiously discriminatory animus" fall within the ambit of § 1985. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Plaintiff has not asserted that he is a member of any particular class; nor has he asserted that Defendants'

13

"conspiracy" was motivated by any class-based discriminatory animus. Consequently, I suggest that Plaintiff's allegations of conspiracy fail to rise to the level of a claim upon which relief could be granted, and amendment to add the claim would be futile. *See Carter v. City of Detroit*, No. 11-15322, 2016 WL 319514, at *5 (E.D. Mich. Jan. 27, 2016).

### 3. Claims Against Defendants in Their Official Capacities

As a final matter, I suggest that all defendants are entitled to dismissal of the claims brought against them in their official capacities because the claims are barred by Eleventh Amendment immunity. The amended complaint names six new defendants: Adam Douglas, Cedric Griffey, Scott Schooley, Natalie Farnsworth, Michele Perry, and Unknown Oasterhof, all in their individual and official capacities. (Doc. 15 at ID 195). All defendants, including those named in the initial complaint, are alleged to have been employed by MDOC at TCF at all relevant times. (Doc. 15 at ID 196–97).

A lawsuit "against a governmental office 'in his official capacity' is the same as a suit against the entity of which the officer is an agent." *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n.2 (1997) (internal quotations omitted). Therefore, suing MDOC employees in their official capacities is the same as suing the State of Michigan. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 428 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).

Since Congress has not abrogated Eleventh Amendment immunity by statute or under § 1983, *see Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), and since the State of Michigan has not consented to suit, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), it remains immune from suit under the Eleventh Amendment. For that reason, I suggest it would be proper for the court to dismiss any claims against MDOC employees in their official capacities.

### c. Conclusion

For all the reasons stated above, it is recommended that the court grant Plaintiff leave to amend his complaint. If the court adopts that recommendation, it is further recommended, based on screening of the complaint, that the court *sua sponte* dismiss (1) Plaintiff's claim for conspiracy, (2) defendants Douglas, Farnsworth, and Perry, and (3) all claims against Defendants in their official capacities.

If all recommendations are adopted, the only remaining claim would be one for retaliation against defendants Yarnice Strange, Kyle Shannon, Cedric Griffey, Scott Schooley, and Unknown Oasterhof.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 22, 2018                    S/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Lamont Heard 252329 at G. Robert Cotton Correctional Facility, 3500 N. Elm Road, Jackson, MI 49201.

Date: May 22, 2018                                By s/Kristen Castaneda
                                                   Case Manager