**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LAMONT HEARD,

     *Plaintiff*,

v.

YARNICE STRANGE, SHANNON KYLE,
CEDRIC GRIFFEY, and SCOTT SCHOOLEY,

    *Defendants*.
_____/

CASE NO. 2:17-CV-13904
DISTRICT JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (ECF No. 105)**

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgement (ECF No. 105) be **GRANTED IN PART** as to Defendants Griffey and Schooley and **DENIED IN PART** as Defendants Shannon and Strange.

**II.   REPORT**

    **A. Background**

On December 4, 2017, plaintiff Lamont Heard filed a complaint under 42 U.S.C. § 1983 against defendants Yarnice Strange and "Shannon Kyle," employees of the Thumb Correctional Facility ("TCF"). In his original complaint, Plaintiff alleged that Defendants retaliated against him for exercising his First Amendment rights by transferring him from TCF to G. Robert Cotton Correctional Facility. (ECF No. 1, PageID.5-7.) According to

1

Plaintiff, as a result of the transfer, he lost the job with which he earned money to pay for his attorney and a private investigator, it became more difficult for his family to visit him, he lost access to certain programming, and his ability to collaborate with co-plaintiffs in a separate civil case was impeded. (*Id*. at PageID.6-7.) The case was referred to the undersigned for all pretrial proceedings on December 14, 2017. (ECF No. 9.)

On February 8, 2018, Defendants filed a motion for summary judgment. (ECF No. 13). On March 2, 2018, Plaintiff filed an amended complaint. (ECF No. 15.) In it, he sought to supplement and alter the factual basis for his retaliation claim, as well as to add a conspiracy claim and six new defendants: Adam Douglas, Natalie Farnsworth, Cedric Griffey, Scott Schooley, Jeffrey Oasterhof, and Michele Perry. (*Id.*) The Court granted Plaintiff leave to file his amendment complaint but dismissed defendants Farnsworth and Perry from the action. (ECF No. 27.) Defendants' motion for summary judgment was denied. (ECF No. 28.) Defendants filed another motion for partial summary judgment, based on failure to exhaust, on November 19, 2018, (ECF No. 43), to which Plaintiff replied with his own motion for summary judgment. (ECF No. 46.) The Court dismissed defendants Douglas and Oosterhof from the action based on failure to exhaust administrative remedies and denied Plaintiff's motion. (ECF No. 72.) The Court dismissed defendants Douglas and Oosterhof for failure to exhaust concerning both Plaintiff's *housing* unit transfer and his *prison* unit transfer. (ECF No. 60, PageID.735 ("I therefore recommend that the court dismiss any claims stemming from Plaintiff's housing unit transfer"), PageID.737 ("I suggest the court grant Defendants' motion for summary judgment as to Oasterhof and Douglas for claims based on the prison transfer described in

2

Plaintiff's July 2017 grievance.")) Plaintiff filed a motion for leave to file an amended complaint on October 26, 2020, (ECF No. 96), which this Court granted in part and denied in part. (ECF No. 104.) The remaining Defendants filed the present motion for summary judgment on January 29, 2021, (ECF No. 105), to which Plaintiff responded and Defendants replied. (ECF Nos. 108, 109.)

### B. Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold

3

evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)

(quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C. Lack of Personal Involvement

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which he complains was committed by a person acting under color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Id*. at 375–76; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Importantly, liability under § 1983 must be based on more than a theory of respondeat superior. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984).

Defendants argue that Plaintiff cannot establish that Defendants Schooley and Griffey were personally involved in any unconstitutional conduct. (ECF No. 105, PageID.1339.) Defendants argue "Griffey and Schooley both attests [sic] that they did not know who Heard was and that they were not aware of his involvement in other lawsuits." (*Id*. at PageID.1340.) They argue that Schooley did not sign any paperwork or attend any meetings relating to Plaintiff's transfer and that Griffey's only involvement was in signing various transfer paperwork, which he did "on a routine basis." (*Id*. at PageID.1340-1341.)

5

They point out that "Heard does not allege that he talked to either Griffey or Schooley." (*Id*. at PageID.1341.)

In turn, Plaintiff argues that there is at least a question of fact regarding Griffey and Schooley's involvement based on their approving and signing Plaintiff's transfer documents. (ECF No. 108, PageID.1602.) Plaintiff argues, "whether [Griffey and Schooley's] self-serving affidavits are to be credited over their actual signatures on official MDOC paperwork is a question for a jury to decide." (*Id*. at PageID.1602) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)).

Here, Plaintiff does not allege that Schooley or Griffey personally acted to effectuate his transfer, either housing unit or prison. Plaintiff argues that regarding his failure to name these two, "Defendants seek to stretch the PLRA beyond its breaking point, to now require a prisoner to list each and every specific instance and communication between defendants and Plaintiff that may relate to the grievance that was filed." (ECF No. 108, PageID.1601.) Plaintiff must, in fact, "make a clear showing that each named defendant was personally involved in the activity that forms that basis of the complaint." *Copeland*, 57 F.3d at 481. If Plaintiff's complaint were based solely on the allegation that he was *transferred*, Schooley and Griffey's signatures alone might suffice. But the complaint is that the transfer was *retaliatory* based on ongoing litigation. I suggest that a signature alone does not suffice as a "clear showing" that both Griffey and Schooley were "personally involved" in a retaliation against Plaintiff based on his litigation. *Id*. Plaintiff does not set forth any facts regarding Schooley or Griffey making comments to Plaintiff or other employees about Plaintiff's litigation, or any other evidence of the sort that would suggest Schooley and

6

Griffey acted retaliatorily, rather than signing routine transfer paperwork. Although Plaintiff argues that Griffey and Schooley's authorization of the transfer were "stepping stones that ultimately led to Plaintiff's retaliatory prison transfer[,]" (ECF No. 108, PageID.1601), a mere stepping stone alone is not enough; Plaintiff must have alleged that Griffey and Schooley were personally involved with a the retaliatory motive, or that there was some *causal* connection. *Rizzo*, 423 U.S. at 371-72.

Further, to establish a First Amendment retaliation claim, the plaintiff must establish three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). "The Sixth Circuit imposes a 'high burden,' demanding some evidence of retaliatory motive and requiring that summary judgment be granted when the plaintiff relies only on conclusory allegations." *Lindensmith v. Walton*, No. 14-13342, 2016 WL 398292 (E.D. Mich. Jan. 25, 2016) (citing *Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir.2010)). I suggest that Plaintiff has failed to produce evidence of a retaliatory motive on Schooley and Griffey's part by signing the transfer paperwork alone.

Plaintiff has not established that a genuine issue of material fact exists as to this point. Accordingly, Defendants Schooley and Griffey should be granted summary judgment on this basis.

**D. First Amendment Retaliation**

To establish a claim for unlawful retaliation under the First Amendment, three elements are necessary: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "[C]onclusory allegations of a retaliatory motive unsupported by material facts are insufficient to state a retaliation claim," and "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Frazier v. Lindsey*, 2019 WL 2996170, at *3, 5-6 (E.D. Mich. July 8, 2019).

Although the parties dispute whether Defendants' alleged conduct in January and March 2017 was properly exhausted, Defendants do not dispute that Plaintiff was engaged in protected conduct on June 21, 2017 by attempting to access the courts by sending out legal mail. Thus I will assume for purposes of this Report and Recommendation that no genuine issue of material fact exists as to whether Plaintiff was engaged in protected conduct when he attempted to mail legal documents on June 21, 2017, and the following analysis will focus on that protected conduct.

At issue here are the second two elements: Defendant argues that adverse action was not taken against Plaintiff and that Plaintiff cannot establish a causal connection between any adverse action and a motive based on Plaintiff's ongoing litigation.

Regarding the second element, the Sixth Circuit has held that an act is adverse if it would serve to 'deter a person of ordinary firmness from the exercise of the right at stake.'" *Carter v. Dolce*, 647 F. Supp. 2d 826, 834-835 (E.D. Mich. 2009) (citation omitted). In *Bennett v. Winn*, No. 17-12249, 2020 WL 5985988, at *12 (E.D. Mich. Feb. 18, 2020), this court pointed out that "[a]s the Sixth Circuit has observed, '[S]ince transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct.' *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005) (citing *Smith v. Yarrow*, 78 Fed. Appx. 529, 543–44 (6th Cir. 2003))." But, "[o]n the other hand, where there are aggravating factors, courts have been willing to find that a prison transfer would deter a person of ordinary firmness. *Id*. at 704." *Bennett*, 2020 WL 5985988 at *12. The court in *Bennett* described *Siggers-El* and the limited exception the flow from it: "in *Siggers-El* . . . the aggravating factors accompanying the transfer included the loss of a high paying job needed to pay for the plaintiff's attorney (representing him in a direct appeal of his criminal conviction), and increased difficulties for the plaintiff's attorney in visiting with or representing the plaintiff because he was moved further away from her. *Id*. This limited exception applies 'where there are foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts.' *Hix v. Tenn. Dept. of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005))." *Bennett*, 2020 WL 5985988 at *12.

Defendants argue that Plaintiff cannot establish his routine transfer constituted adverse action. (*Id*.) They argue that his security level was not increased due to the transfer and the injuries Plaintiff claims he suffered, such as "loss of job to pay for litigation costs

9

for *Heard I*, increased difficulty for his family to visit him, loss of access to programing, and placement in a 'dangerous' facility (ECF No. 96-2, PageID.959)," (*Id*. at PageID.1344), do not constitute adverse action.

In response, Plaintiff argues that a dispute of fact exists as to whether Plaintiff suffered an adverse action and whether his protected conduct was causally related to the adverse action. (ECF No. 108, PageID.1602.) Plaintiff argues that his transfer alone was not an adverse action, but that "the consequences that flowed from his retaliatory transfer fit squarely within the exception outlined by the Sixth Circuit." (*Id*. at PageID.1693.) Plaintiff cites the Sixth Circuit in *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) for the proposition that "a prison transfer or the threat of a transfer can certainly be 'an adverse action,' if that transfer or threat would result in 'foreseeable, negative consequences' to the particular prisoner." (ECF No. 108, PageID.1603-1604) (citing *Siggers-El*, 412 F.3d at 701-02.)

The alleged adverse action taken here consists of Plaintiff losing access to the law library, his ability to conduct legal research with his co-plaintiffs in the ongoing litigation of *Heard I*, and "several months of wages" as a prison tutor, wages that Plaintiff contends helped fund his litigation activities. (ECF No. 108, PageID.1604-05.) Plaintiff admits that regardless of what he alleges as the adverse action taken against him, even after his transfer and access to the above listed resources, he was still able to, and continued to, file pleadings in *Heard I*. (*Id*. at PageID.1604.) Plaintiff also argues that the prison to which he was transferred was more violent than the original one he was housed in. (*Id*.)

The evidence shows that Plaintiff did indeed lose his job upon the transfer but obtained the same or a similar job at his new location a few months later. (ECF No. 13, PageID.55.) Although Defendants contend that Plaintiff's security status or level was not changed upon his transfer, (*id*.), there does appear to be evidence that the actual prison to which he was transferred was more dangerous. *See* ECF No. 108, Ex. 13, MDOC Subpeona Response; *see also* ECF No. 108, PageID.1605 citing *Morris v. Powell*, 449 F.3d 682, 686-87 (5th Cir. 2006) (holding that a transfer to a more dangerous prison unit was sufficient to state a claim of adverse action.)

On May 5, 2019, the undersigned found, in response to a prior Motion for Summary Judgment on Plaintiff's part, that summary judgment was not proper on this issue. (ECF No. 60, PageID.742-46.) I suggest the same conclusion still applies now. On the basis of the limited exception set forth in *Siggers-El*, I suggest that a genuine issue of fact exists as to whether the actions taken against Plaintiff, which resulted in the loss of his use of the law library and collaboration with co-plaintiffs and the transfer to a more dangerous facility, among others, are "foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts." *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005). The evidence is not entirely clear, and without a doubt, that these consequences were not adverse actions for the purposes of a retaliation claims, and I suggest that a question of fact exists which should be posed to a jury as to adverse action. Thus, I suggest that summary judgment is not proper on this issue.

The third element of retaliation, causation, focuses on the defendant's motive. *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007). Because "[m]otive is often very difficult

11

to prove with direct evidence in retaliation cases," the Sixth Circuit has stated that "[c]ircumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). The framework for addressing this element consists of shifting burdens: "[a]fter a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity." *Thomas*, 481 F.3d at 441-42. Generally, "the question is a factual issue to be resolved by a jury." *Maben*, 887 F.3d at 267 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 519-520 (6th Cir. 2008)).

Defendants argue that Plaintiff cannot establish causation between any protected activity and the alleged adverse action—they argue, "[e]ven assuming, for the purposes of summary judgment, that Heard was engaged in legitimate First Amendment activities on all three of the occasions discussed in Part A, Heard cannot establish causation between any of those incidents and his transfer from TCF." (ECF No. 105 PageID.1349.) Defendant argues that the transfer process began before June 21, 2017 and was therefore "divorced" from "any alleged disagreement between Plaintiff and Shannon and Strange over his legal mail on June 21, 2017." (ECF No. 105, PageID.1352.) Plaintiff argues that the adverse action was causally connected to his protected conduct. (ECF No. 108, PageID.1606-07.)

Plaintiff testified that on June 21, when he was attempting to mail filings related to his ongoing litigation, Defendant Shannon was irritated that Plaintiff was sending out mail at the end of Shannon's shift, and threatened to have him transferred. (ECF No. 108, Ex.

12

1, Heard Dep., PageID.1633.) According to Plaintiff, on June 22, 2017, Shannon put Plaintiff's name in the "transfer request system." (*Id*.) Plaintiff further testified that on June 23, 2017, he was called into the mailroom, where Defendant Strange threatened to have Plaintiff transferred if he sent the legal mail. (Heard Dep. at PageID.1651.) On June 26, 2017, Plaintiff was transferred. (ECF No. 108, Ex. 11, Transfer Screen, PageID.1863.)

Even assuming that the allegations from January and March 2017 are unexhausted and too temporally distant to meet the third element in this case as Defendants argue, the protected conduct from June 21, 2017 as it relates to the following conduct from Shannon and Strange presents at least a question of fact that should go to a jury.

Keeping in mind that generally, "the question is a factual issue to be resolved by a jury[,]" *Maben*, 887 F.3d at 267, the actions that succeeded Plaintiff's protected conduct included threats from both Shannon and Strange about transferring Plaintiff if he sent the mail. However, Defendants argue that the process to transfer Plaintiff began before June 21, 2017; they refer to a transfer screen being completed on June 16, 2017 as an example. (ECF No. 105, PageID.1353.) I am not convinced that the completion of a *transfer screen*, which is not a *transfer*, is sufficient given the comments made by Shannon and Strange to conclude that Defendants "would have taken the same action even without the protected activity." *Thomas*, 481 F.3d at 441-42. And, creating further questions of fact, Plaintiff testified that his name was placed in the "transfer request system" on June 22, *after* the protected conduct. (Heard Dep., PageID.1633.) Indeed, Plaintiff's Exhibit 11, the "transfer screen," indicates that the screen was "entered" on June 22, 2017. (ECF No. 108, Ex. 11, Transfer Screen, PageID.1864.) Plaintiff further argues, in opposition to Defendants'

13

contention that Plaintiff was prepared for transfer on June 16, that "Plaintiff was *not* selected to be transferred until sometime between June 19 and June 25." (ECF No. 108, PageID.1596 (emphasis in original) (citing ECF No. 108, Ex. 11, Farnsworth Dep, PageID.1843.))

The comments by Shannon and Strange should not be ignored as they relate to the timing of Plaintiff's transfer and I suggest that this presents at least a question of fact to be determined by a jury: whether the protected conduct of June 21, 2017 was a motivating factor in Plaintiff's transfer. I suggest Plaintiffs have presented evidence that a material dispute remains as to whether defendants Shannon or Strange were motivated by Plaintiff's protected conduct to transfer him. Summary judgment should not be granted as to Shannon or Strange.

### E. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (1999) (quotation marks omitted). Further,

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.
>
> Because qualified immunity is an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted

> to go to trial. Indeed, we have made clear that the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest stage in litigation.

*Id*. at 231–32 (citations and quotation marks omitted).

"If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The *Saucier* Court laid out a two-step process for determining whether an official may claim qualified immunity: first, "Taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right?"; and second, "the next . . . step is to ask whether the right was clearly established." *Id*. at 201. The inquiry into whether the right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition; and it serves to advance understanding of the law . . . ." *Id*. The right at issue must be clearly established "in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) . The facts are to be "viewed in the light most favorable to the plaintiff[.]" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

In this case, as previously analyzed, there exists a genuine issue of material fact as to whether Plaintiff's constitutional rights were violated in the form of a retaliatory transfer. The question becomes whether any such violation happened in light of clearly established

law. Plaintiff argues that "[t]he First Amendment right against retaliation for accessing the courts is well established." (ECF No. 108, PageID.1610) (citing *Thaddeus-X*, 175 F.3d at 391.) Defendants argue, though, that while the general framework for a First Amendment retaliation claim is clearly established, "[t]his is not enough to defeat qualified immunity [] because the 'right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (ECF No. 105, PageID.1355-56) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).)

I first note that "this Court "look[s] first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit Court of Appeals] and other courts within our circuit, and finally to decisions of other circuits" in deciding whether the law is clearly established. *Key v. Grayson*, 179 F.3d 996, 999–1000 (6th Cir.1999). This court has previously found that "conduct of transferring Plaintiff from TCF in Lapeer, Michigan to SRF in Freeland, Michigan in retaliation for Plaintiff's filing a civil-rights complaint and/or grievance(s) did not violate clearly established federal law at the time of Plaintiff's transfer in March 2010." *Ashley v. Crane*, No. 11-10603, 2011 WL 7090721, at *4 (E.D. Mich. Dec. 7, 2011). In *Ashely*, the court granted qualified immunity where a pro se prisoner plaintiff brought suit against prison employees for retaliation after he was transferred to a different prison following the filing of grievances and a lawsuit. The court compared relevant cases: "*Dye v. DeAngelo*, No. 09–14545, 2010 WL 4982925, at *5–6 (E.D. Mich. Nov.4, 2010) report adopted by 2010 WL 4976936 (E.D. Mich. Dec.2, 2010) (finding that defendants were

16

entitled to a qualified immunity defense against a First Amendment retaliation claim under the clearly-established prong where defendants allegedly transferred the plaintiff from a facility in Detroit, Michigan to a facility in Lapeer, Michigan at the same security level, and the plaintiff did not allege that the defendants were aware of ongoing legal proceedings or that the transfer would hinder plaintiff's ability to pay his pro bono attorney); *cf. Siggers–El*, 412 F.3d at 702, 703–04 (finding defendant not entitled to qualified immunity for retaliatory transfer to another facility that resulted in the loss of prisoner-plaintiff's "high paying job" and made it more difficulty [sic] for the plaintiff's attorney to visit[.]" *Ashely*, 2011 WL 7090721 at *4. Ultimately, the court found that "assuming some negative consequences from the transfer, the Complaint does not assert that any such consequences 'inextricably followed' from Defendants' act of transferring Plaintiff to SRF. Nor does Plaintiff's Complaint provide that any inescapable, adverse consequences were reasonably foreseeable to Defendants Newman, Mullins, and Gidley." *Id*. at *5.

In *Siggers-El*, the Sixth Circuit affirmed the denial of qualified immunity, writing that "a reasonable officer would certainly know that a retaliatory transfer for a prisoner's exercise of his right to access the courts which inhibits the prisoner's ability to access the courts would deter a person of ordinary firmness from continuing to engage in the protected conduct. Since the Defendant 'knew or should have known of the constitutionally violative effect of his actions,' he is not entitled to qualified immunity as a matter of law." *Siggers-El*, 412 F.3d at 704 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 820–21 (Brennan, J., concurring)).

17

I suggest that this case is closer factually to *Siggers-El* than *Ashely*, at least enough such that it would have put a reasonably prudent individual on notice of the type of conduct that was "constitutionally violative" and would discourage an inmate from utilizing his access to the courts. In *Ashely*, where the court granted qualified immunity, the plaintiff did not allege the negative consequences that were alleged in *Siggers-El* and, similarly, in this case. Thus, I suggest that Defendants are not entitled to qualified immunity. Under the "reasonably established contours" of the law in *Siggers-El*, a prison employee should have been on notice not only of the general framework of a retaliation claim, as Defendant argues, but indeed of the specific conduct that triggers such a claim: including loss of paid work at one facility, inability to continue working with co-plaintiffs, loss of access to the law library, and transfer to a more dangerous prison, for example, as Plaintiff appears to have suffered here.

### F. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgement be **GRANTED IN PART** as to Defendants Griffey and Schooley, and Griffey and Schooley thus be dismissed from this action, and **DENIEDED IN PART** as Defendants Shannon and Strange.

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.

18

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 15, 2021                                  S/ PATRICIA T. MORRIS
                                                                  Patricia T. Morris
                                                                  United States Magistrate Judge